We'll hear argument first this morning in Case 15-6092, Mathis v. United States. Mr. Fleming. Mr. Chief Justice, and may it please the Court. The Iowa statute under which Mr. Mathis was convicted defines one crime, and Iowa does not need to prove generic burglary to convict under it. The Eighth Circuit below, and the government here, nonetheless, want to use the modified categorical approach, not for its usual purpose, which is to identify the crime of conviction. We know what that is. But rather to identify the means of commission. That is contrary to ACCA's categorical approach, and it's irreconcilable with both the result and the reasoning of this Court's decision in Des Campes. One of the things that we have here is the crime, burglary, and there are two ways of committing it. One involves a structure, one involves a vehicle, and those can be easily divided. We look at the charge, the charge is for a structure, not for a vehicle. Why is it not divisible? For the exact same reason, Justice Ginsburg, that the California statute at issue in Des Campes was not divisible. In that case as well, the indictment charged that Mr. Des Campes had unlawfully and feloniously entered the grocery store. The prosecutor stated as much, that Mr. Des Campes had broken and entered into a grocery store, and Mr. Des Campes did not object to that. Nonetheless, this Court quite properly held that it was not divisible because California was not required to prove unlawful entry in order to get a conviction. The same is true of Mr. Mathis. Iowa did not have to prove the type of occupied structure that he supposedly burglarized. Ginsburg. Ginsburg. In Des Campes, there was an element that didn't have to be proved under the State statute. You didn't have to prove unlawful. The California would have had to prove entry, just as Iowa would have to prove an occupied structure, but California did not have to prove whether the entry was unlawful, as would have been required to make the offense a generic burglary offense. Similarly here, Iowa did not need to prove burglary of a building as opposed to burglary of a land, air or water vehicle or similar place. Those are issues that there's no dispute. A jury could have divided on, or Mr. Mathis would not have had to admit specifically in order to permit a conviction under the Iowa statute. Breyer. They have to prove one of the they define somewhere structure, right, in the statute. They do, Justice Breyer. And don't you have to prove that that definition applies? I mean, you know, suppose it was a structure for an animal at a zoo or something. I mean, that wouldn't count, would it? It might not, but there has to be. Don't you have to at least prove that it falls within the definition? The definition of occupied structure, yes, Your Honor. Okay. And similarly in Taylor, you have to prove that it falls within the statute's definition of boat or car or house, right? You have to prove one of the three. That is the difference, Justice Breyer. But you don't have to prove. You have to prove in Massachusetts if you have an indictment which says it was like a houseboat, so they're not certain what it counts as. So they say, don't you have to prove our prosecutor says it's a boat or a house. Now, would that get a conviction in Massachusetts? They prove that. It's either a boat or a house. Do they get a conviction or not? This Court in Shepard assumed that the answer is no. No, no, we don't know Massachusetts law. I'm saying under Massachusetts law, would you be able to convict the person? This Court assumed, because it wasn't disputed in Shepard, that the answer is no, and that boat is not. The answer is no? You cannot convict a person, say, on a houseboat in Massachusetts where the prosecutor says it's either a house or a boat. They have to go into what the difference is? As this Court interpreted it in Shepard, house or boat are elements of the crime. So in other words, if six people think a houseboat is a boat and six people think a houseboat is a house, the guy gets off? If Massachusetts. Do you have any case on that? I would be rather surprised. Not in Massachusetts, Your Honor, but this is an Iowa case. I know, but what I'm driving at, it's the same thing, the same thing. That you've made up a very ingenious difference, but why isn't it just the same thing here as was in Massachusetts? Because Massachusetts and Iowa have chosen to define different crimes, and they have the prerogative to do that. If Iowa says, we don't care, as it has said, ultimately what the means is, the location of the burglary is a means, the jury can divide on that and still convict as long as they find an occupied structure. State v. Duncan holds that. There's no dispute. In that circumstance, one cannot be sure, whether it's a jury trial, which this was not, except for the case of one as revealed by the record, or a plea, if Mr. Mathis had been told you are being charged with burglarizing a garage, and he said, oh, no, I didn't break into a garage, I broke into a car parked outside the garage, that would have made no difference under Iowa law, and he would have had no basis to contest the means of commission. A judge might not even have allowed him to do it, and certainly his defense attorney would have said, let's not urge the prosecutor. Breyer. That's why I asked you about Massachusetts. Massachusetts might well be different. You violated section 121, prosecutor, he broke into a house, defendant, no, I broke into a boat, admitted, yes, guilty or not guilty? In Massachusetts, the statute itself is not clear on the point. We give the example of Vermont, where it does make a difference, and the reason it makes a difference is because Vermont punishes burglary of a dwelling more severely than burglary of a boat. And so a Vermont prosecutor does need to show which it is, because it makes a difference to the sentence. And in that circumstance, the statute is divisible, and it would be proper to go to    Alito, why is that? Alito, why is that? Alito, why is that? Well, there are a lot of reasons why Iowa might want to take the approach that it does. Suppose the person is convicted of, suppose the evidence involves the burglary of a trailer. So you'd have the rather ridiculous situation of a jury, if that was, if those are separate elements, then if six of the jurors thought, well, this trailer is not very movable, so I think it's a house. And the others say, well, you know, it's possible you could hook it up to a truck and move it, so it's a vehicle. So there couldn't be an agreement, and the defendant would be acquitted. That's a rather strange result that the Iowa legislature might want to avoid. But you want to attribute the same you want to you want to say the Massachusetts legislature in the case of a houseboat would permit the same thing? You have no Massachusetts case that says that. I do not, Your Honor, but this is not a Massachusetts case. And Vermont clearly does. The Vermont legislature has made that choice. Well, maybe they have more houseboats in Massachusetts than they do in Vermont. But the point, Justice Alito, is that the State is free to define its crime as it wishes. You are absolutely right that Iowa may decide it prefers to make it easier for its State prosecutors to get convictions so that they don't have to get jury unanimity on the specific location. And then they care less about whether their convictions are going to be used as action. Alito, the point is, what is a Federal, under your approach, what is a Federal sentencing court supposed to do in a situation like the Massachusetts situation, where there is no case, there is no Massachusetts case? So what is the court supposed to do? Now, in the end, this Court has said it's as simple as pie to determine whether something is an element or a means. That's your view, too. But just tell me what the Federal sentencing court would do in that situation. If there truly were a situation where all else had failed, all the standard tools of statutory interpretation. Alito, which will often be the case. Will sometimes be the case. I mean, there are a number of them that we cite where State law is plain on the point. And the State courts have had to resolve this, whether in the context of a double jeopardy challenge or a challenge to the indictment or a request for a unanimous jury instruction. So what happens if there is a State case that says, well, this is definitively an element or a means? In the situation where that arises, obviously, the sentencing court will apply the ordinary tools of statutory interpretation, looking at the text to say, for instance, in the case of Vermont, are they punishing one of the particular locations more severely than another? In that circumstance, we know they have to be elements, not means. Alito, suppose they don't. So if it looks at a case like Massachusetts, what's the Federal sentencing court supposed to do? Obviously, one would look to authoritative sources like jury instructions. One could look at commentaries. One would look at legislative history. One would look at how the Massachusetts courts had interpreted comparable statutes to see if there were any general principles that the Massachusetts courts possibly had. Kagan, isn't there also something that DeCamp says that can be done, which is, you know, maybe you have a case and it just gives you the answer. Maybe you have jury instructions and it gives you the answer. If they don't, DeCamp indicates in footnotes 2 that you can look to the charging documents for the limited purpose of seeing whether the prosecutor is treating the house or a boat as a means or as an element. And sometimes that will be clear. I mean, you might have one set of charging documents and it will say the person burgled either a house or a boat. And then it will be clear that the thing is a means and it's not an element. Or another charging document can say, as to a houseboat, the person burgled a house. And then that indicates that Massachusetts law does treat this as an element and that you have to prove one or the other and that the prosecutor has made his choice. Isn't that right? It's certainly right as to the first point. And I think certainly looking at Shepard documents to determine, for instance, if house and boat are charged in the same count, then to avoid duplicity. These documents are a clue to whether something is an element or instead a means. Sometimes they're a very good clue. Sometimes they won't get you all the way there. But they're certainly a clue as to whether something is an element or a means. And so you can look to the Shepard documents to try to figure out that question. I think as Your Honor has phrased it, we have no quarrel with that. As long as the Supreme Court is being cautious about it. Alito, is that correct, Mr. Fleming? That depends on State pleading law. Are you telling us that in every State, if something is a mean, if you have a category of means, it is impermissible for the charge indictment, whether it's an indictment or an information, to specify the thing that was done? It has to be done in terms of the elements of the statute? You're going to tell us that that is State pleading law in every jurisdiction? No, Your Honor. That's not our point. Well, then how can you tell from the charging document that something is an element or a means? I think if, in the limited situation that Justice Kagan's question posited, which is when you have a situation where a prosecutor charges house and boat together in one count, that would be a duplicitous indictment if they were different elements. So that is a clue that at least the prosecutor viewed them as different means of commission of a single offense. Well, what if it charges one? What if, in this case, what if it charged, what if the charging document just charged one? Does that make it an element? I think in that situation the Shepard document would be inconclusive and it would not be, it would not be indicative of which it was. And so in that circumstance, I apologize, Justice Sotomayor. Why don't we use this case? I would welcome that, Your Honor. All right. At the joint appendix, it says, one of the charging instruments says that said Richard Allen Mathis on such-and-such a date in Iowa, unlawfully and willfully break and I'm sorry about the tenses, broke and entered a storage shed belonging to the victim with the intention to commit a theft. If I read that, do I know what's an element or a means? No, Your Honor. I mean, it's very clear that the only thing being charged is breaking into a shed. Absolutely. A prosecutor will often add detail that is not an element or a means. Well, I mean, this doesn't say willfully, willfully, unlawfully and willfully. Do I have to go further? And why? Meaning, isn't the issue here what we left open in DeShoppe? Iowa calls this a means, but if I read the instrument, it seems like an element. So what does a judge do? Give me the steps of interpretive principles that a judge would do with a case like this. Of course, Your Honor. Is State law dispositive? That's number first. Let's start there. Yes, Your Honor. State law is dispositive because States define the elements of their crimes. This Court made that very clear in the plurality opinion in Shad. It's true in Richardson. The State is defining the crime. And as usual in matters of State law, Federal courts defer to the State court interpretation of their own laws. So that's your entire case, correct? Well, in this case, that is correct. Let's assume Iowa was silent. That was the question that Justice Breyer was coming to. If I look at this, it seems it doesn't say enter a storage area or a structure as a boat, a structure or a boat. It says just enter a storage ship. The same problem would have occurred and did occur in DeKamp. Mr. DeKamp's criminal information said feloniously entered a building, a grocery store, I believe it was. Yes. The problem with DeKamp there is that feloniously entered had two potential meanings. You broke and you entered, or you remained unlawfully and committed a crime. And what we said in DeKamp was, reading felonious entry, you don't know which of the two it is because it's not an element. You just have to do one or one. It's not an element, it's a means. We didn't know which one. But this is sort of different. This is the indictment saying the structure you broke into is this particular one. If I may, Justice Sotomayor, if you – if Your Honor had thought that either the indictment or the plea colloquy were dispositive of figuring out whether the generic offense was involved for purposes of ACCA, Mr. DeKamp would have lost, because his indictment said willfully, unlawfully, and feloniously entered a building, and at the plea hearing, the prosecutor said, without objection from Mr. DeKamp, that the crime involved the breaking and entering of a grocery store. So there was no question, if you were looking at the Shepard documents in DeKamp, that they set forth generic burglary. Nonetheless, that wasn't enough, because, and these are the Court's words, California to get a conviction need not prove that DeKamp broke and entered. And it does not matter whether he did. It doesn't matter whether the prosecutor said he did. It doesn't matter whether he admitted that he did. The statute, the elements of the statute of conviction. Sotomayor, you see a difference between he had to do one or the other here. He had to break into a house or break into a vehicle. But in DeChamp, he could have done one of two things. He could have broken and entered, or he could have stayed unlawfully. And the point is that California did not need to show beyond a reasonable doubt either of those. Exactly. He wasn't being guilty to one or the other. He was saying, I did unlawfully, what the indictment said, feloniously enter. But he did not have to and did not admit exactly which of the two ways he did it. But the non-generic aspect of the California offense was that you could enter lawfully and then shop with the intent to shoplift, and that could still be punishable under this statute. And that was the point on which the statute swept. Sotomayor, go back to my ultimate question. Tell me the steps. The steps for how the sentence was determined. You say State law is dispositive. Yes. Assume State law is unclear. So there's a general answer to the question and a specific answer to the question. The general answer is that the Court determines the elements of the State crime in the same way as it applies State law in its civil diversity cases or how it would determine the elements of a State crime in a double jeopardy challenge or, for that matter, under the categorical approach. This Court did it itself in Duenas-Alvarez, in James, in Johnson. Federal courts ascertaining the State law components of a particular statute in front of them is nothing new, nor is it particularly difficult. The specific answer, if there is no State case law available, you look at the text of the statute as always to begin with. It may be that the text of the statute tells you that a particular alternative is punished more harshly than others. That's the case in Vermont. Then you know that they are elements. You would look at the case law backdrop of the enactment. It's possible the State legislature was reacting to a particular prior decision. The Maryland Court of Appeals did that in the Rice case, which is cited in the American Immigration Lawyers' Brief. They looked at the background of the enactment of the statute and determined that the new theft statute in Maryland had amalgamated larceny, receiving stolen property, embezzlement as different means of committing one theft offense. Ginsburg. Ginsburg. And must everything be either a means or an element? Suppose I just look at this statute and I say, here's a statute punishing burglary, and it tells us two ways in which this offense can be committed, one way or the other way. Why do I have to type it, an element or a means, rather than saying what it is? It is a way of committing the offense. I view, Justice Ginsburg, a way of committing the offense as a synonym for the means. The definition of an element, which this Court used in Richardson, and I don't think it's disputed, I think the government uses it in its own brief, is a fact that the prosecution must prove to the jury beyond a reasonable doubt in order to get a conviction of the crime. And that goes back to the Court's opinion in Taylor, which is why ACCA is a categorical approach, is because it turns on the elements of the statute of conviction. Congress never intended that conviction for its own. This defendant pled guilty to an information that charged unlawfully entering a garage, a house. That's what he pled guilty to, right? The information states that. There is no, nothing in the record about his plea. Ginsburg, I think that there wasn't any possibility of a boat or a car being in this picture. The record does not exclude that, Your Honor. If my client had said, upon appearing for the plea, to his lawyer, you know, I know the information says a garage, but I actually only went into the car that was parked outside the garage, his lawyer would in all likelihood have said that doesn't matter. If you say that, you're just admitting your guilt in the same way, because that is not an element of the offense under Iowa law. It won't affect your guilt and it won't affect your sentence. And so there would have been no interest. Kennedy, I was curious to know, you said Congress never intended, and then we didn't get the answer. Never intended. I'm sure Congress never intended that we have the dialogue that we're having here today. This is such an artificial. You were going to say, what did Congress intend? Congress. You couldn't finish that. I'd be happy to, Justice Kennedy. Congress intended that a conviction for a particular crime would be an ACCA predicate offense in all cases or in none. That is what this Court said in Taylor, reaffirmed it in DeKalb. It is an on-off switch. And a conviction for Iowa burglary under Section 713.1 of the Iowa Code either is an ACCA predicate or it is not in all cases. It does not matter what was particularly charged in a particular case. It does not matter what the plea agreement said. It doesn't matter what the jury instruction said, because the crime itself is unitary. This is not a statute that sets out multiple different crimes with multiple different elements where the modified categorical approach is necessary to figure out what crime he was convicted of. We know what crime he was convicted of, and it is not a generic offense. And to the extent there's any doubt about that, I think it's important to go back to the reasons why Mr. Dekamp won. And why this Court rejected the Ninth Circuit's approach in Aguila Montes de Oca, which is essentially what the government is now arguing, which is that you can go to the Shepard documents to try to find out not the offense of conviction, but what this defendant specifically did. And this Court rejected that soundly, and there were three reasons. The first was the statutory intent behind what Congress enacted, which is to make sure that each conviction of a particular crime is an on-off switch and produces the same results all the time. The second is the sixth. Alitoso, what is the evidence in the two, you said the statutory text. What is the evidence in the statutory text of Oca that this is what Congress intended? It's the prior to Apprendi and all of this other stuff. What's the statutory evidence? This Court in Taylor relied on the fact that Congress used the word convictions as opposed to someone who had committed an offense and also looked at the legislative history, which specifically indicated that Congress did not mean a conviction for a particular crime to sometimes be an act of predicate and sometimes not. So if someone were explaining what your client pled guilty to, they wouldn't say, you know, he was convicted for breaking into a garage. They wouldn't say that? It may be an ordinary person may well use that description. They may also say he was convicted of breaking into the garage at 123 Main Street, but that's not an element either. Wasn't Congress interested in what the person did rather than what the statute said? On the contrary, Your Honor, that's exactly what Taylor and its progeny say is not the case. And DeKalb says it earlier, too. They're not interested in what the person wanted. They say it's not the case that that's what Congress wanted? Congress was not. By passing ACCA, Congress was interested in what the person was convicted of, which is why they use the word convictions. They did not use the language, for instance, of the statute in Nijuan, which is different and does not trigger a categorical approach because it looks to conduct. Congress could have passed that statute. After this Court decided Taylor, Congress could have amended ACCA in order to make it conduct-based. It hasn't done so. Kennedy, you're entitled, probably required, to argue the cases as we've written them, and you're doing that. Yes, Your Honor. It does seem to me that this we're living in a very artificial world. Does Judge Kaczynski's approach that's set forth in the Ninth Circuit in his separate opinion, what would be the result in your case if we used his approach? We would prevail, Your Honor. Judge Kaczynski's approach is exactly the same as one of the questions Justice Kagan asked earlier, which is you can look at the Shepard documents for the very limited purpose of figuring out what the elements of the State crime are to the extent there isn't dispositive State case law or other interpretive aids that the Court can use. In this case, we have dispositive State case law, so Judge Kaczynski's approach would work exactly the way we think it should. He was very clear that the modified categorical approach only works in the circumstance we say it works in, namely, when the State defines more than one crime in a single statute. He did not say that you could look for means of commission. That was the position of the other Judge Graber's dissental in the Rendon case, and it's the one that the Ninth Circuit rejected in Bank in the Almanza-Reynolds case. Breyer, I'd like to try with one – with one – what I'm trying to do is get the essence of your argument. Trying to get it. And so you can just say I don't have it or I do have it. If I don't have it, I'll go back and read it, I promise, and I'll get it before I decide this. I think you're looking at decap, and you say, look, the word in the statute, Federal, is crime. It doesn't mean what a person does on a particular occasion. It means the kind of thing in a statute. So imagine we had the word burglary, and that's all the statute said. And then a court said you can commit this in any one of five ways, a boat, a house, a car, et cetera. Now, even if the charging document there said house, that wouldn't be good enough because the crime is what the statute says. So you start there. And you say, now, what difference could it possibly make? If in a different section of the statute there are some statutory words, but they say just what the court just said in the other case. Now, okay, I'll go back and read it. I mean no, I'm waiting for your answer. And that's what you're saying. You're saying that in both cases, the key point is that the court was telling you in the first case that the burglary can be committed in different ways, which means you don't have to charge it, and the jury doesn't have to be unanimous in respect to it. Now, if you take those same words out of what the court said and put it in the statute, which you think happened here, then those words don't require the jury to charge it or the jury to find it unanimously. So it's not an element. And if it was good enough to get my client out of the statute in the first case, it should be good enough when the same thing appears in the statute. Is that your basic argument? It is. And the reason for that, Justice Breyer, is that it does not matter from the first case. Because it's not part of the crime. It is not part of the crime. And what Congress wanted was cause. It was the crime. And the difficulty of the government's position is that the government says it makes all the difference in the world whether the statute uses the word or. And if the California statute in Decamp had been phrased, instead of saying every person who enters, had said every person who enters lawfully or unlawfully, then the outcome would have been completely different in the government's position. And that would have created a significant amount of confusion in the government's mind, even though it would not have changed what a California prosecutor had to prove, it would not change what someone had to admit in a plea, and it would have created significant sixth amendment difficulties to enhance someone's sentence based on something like that, where the attention in the State proceeding is in no way focused on that. With the Court's permission, I reserve the balance of my time. Roberts. Thank you, counsel. Ms. Saharsky. Mr. Chief Justice, and may it please the Court. From Taylor forward, this Court has never adopted a means-elements distinction that turns on parsing State law. In fact, it's done and said the opposite. And adopting such an inquiry now would be highly disruptive and detrimental to the uniform administration of Federal law. I want to start where Petitioner's counsel ended, which was saying that what we're doing in this case is the same as desk camps, et cetera. I think that Justice Sotomayor correctly identified the difference between this case and desk camps. In desk camps, there was a component of generic burglary that was just not present in the State statute. You didn't have statutory alternatives. And as a result of that, you couldn't do the matching that happens under the modified categorical approach. The approach is all about trying to match, was the defendant's conviction under this State statute or the Federal offense or not. Kagan, that's true, Ms. Zaharsky. I mean, you could take that decamp law and, as Mr. Fleming did or some other way, essentially do the exact same thing with an explicit disjunctive. The way Mr. Fleming did it, he said lawfully or unlawfully. You could say breaking and entering or not breaking and entering. I mean, there would be a zillion ways of phrasing the exact same thing disjunctively on the face of a statute. And I think Mr. Fleming is right that that would not have made a difference to our analysis. Zaharsky Well, I think that it did make a difference to the Court's analysis. And what I would give you as an example, and this was in the Court's opinion in desk camps, was the way that this Court showed that the Ninth Circuit was wrong was it gave two examples of an assault with a weapon statute. It said, imagine an assault with a weapon statute that just says a weapon and doesn't specify any weapons. And then imagine a second statute that says assault with a weapon and specifies eight individual weapons. Is there a difference between those two cases? And the Court's opinion says, yes, the first case does not have a component of generic burglary, and so you cannot match it with the Federal offense. It doesn't have the entry component. But in the second case, you do have – I mean, that's – I'm sorry, that was an assault. But you do have a component that you could match with the Federal offense. And so assuming that the component is an element, so that gets you back to your first statement, which is that it didn't matter whether it was an element or something else, a means was just as good as long as it's phrased in the disjunctive. And, you know, all of our cases, it's not just DeCamp. It goes back to Taylor and Shepard and Johnson. They all use the language of elements. DeCamp in the introduction uses the word elements ten times. So if we really meant elements or means or whatever, it's a funny thing, it's a funny way to write all of our opinions. Well, two – I think this is a critical question, and there are really two responses to it. The first is, when describing divisibility, which is this question of can you divide up the statute for matching purposes, the Court said element, and it also equated that with the statutory alternatives. It did that throughout the opinion. The second point is that there's a reason that when the Court – the Court could say element and statutory alternatives interchangeably, because a distinction between means and elements doesn't matter to divisibility. I think really the heart of the modified categorical approach, as if – if I can just explain, as the Court has explained, is you need to make sure that the defendant was convicted of the generic offense, that the jury or the fact finder necessarily found the generic offense and not something else. And you can tell that from the ordinary application of the modified categorical approach using the Shepard documents. And, frankly – Kagan But, you see, DeCamp makes it quite clear that there's two different kinds of looking – what DeCamp says is you have to be able to say that a person was necessarily convicted of something, meaning that the statute requires him to be convicted of something. It is not good enough to look at the course of proceedings and to infer that a jury or judge actually did find something. DeCamp says this in no uncertain terms that, you know, I mean, sometimes those inferences can be very powerful. And DeCamp says it's not enough, that what you have to find is a necessary finding in the sense that a statute makes something necessary in order for a conviction to occur. And that's the distinction between elements and means. And I'll just say one last thing, and I know I've been talking for a while, so I'll let you talk. But the entire discussion between the dissent and the majority was about this, right? The dissent said it's really terrible what the Court just did. It just created this distinction between elements and means. And the majority said, yes, that's exactly the distinction we're using, and we think it's the right decision, distinction. So nine members of this Court thought that the distinction that we were using was a distinction between elements and means. Saharsky, and I think you're pointing to the Court's footnote, too, and when the Court was talking about means as a general matter in DeCamp's, it was talking about things not specified in the statute because, of course, the statutory term was overbrought in DeCamp's. But if we look to what the Court meant in footnote 2, you're right, it talks about a distinction between means and elements. But the Court's ultimate conclusion was that it's not just footnote 2. If I could just interrupt. I mean, footnote 2 comes as a response to the dissent, and the dissent says this is the problem with the entire opinion, is that it keeps on talking about elements, but it's hard to distinguish between elements and means. And we shouldn't be distinguishing between those two things. So the whole opinion is this elements focus, which then the dissent attacks. Saharsky, and I will talk about both footnote 2 and the rest of the Court's opinion. So if we look at this discussion in footnote 2, I think the Court's ultimate conclusion is very telling and important to us, because the Court says there's no real-world reason to worry about the kind of discussion with State law that we're having today. The Court says whatever a statute lists, whether elements or means, the Court need not parse State law. When State law is drafted in the alternative, you resort to the Shepard documents. And I think your one of your earlier questions suggested can't we look to the Shepard documents to see whether something is an element. And we think that. Sotomayor, if you need to. Saharsky, we think that that general approach is correct, which to us, you know, we understood this to say just look to the statute of conviction in the Shepard documents. Now, when only one thing is at issue, like in this case, which is burglary of a house, then I don't think you necessarily know whether it would be a means in a different case where two things are charged, but I think you confidently know that the person was convicted of burglary of a house in this case. Kagan, a particular statute, a particular State, excuse me, a particular State court decision that says exactly what is an element and what is a means and that this is not an element. Saharsky, but I don't think. So you don't need to look any further than a dispositive State court decision on the subject. Saharsky, a couple of responses. The first is that these decisions, I don't think these questions don't arise under the State courts very often. I think between all of the resources and the parties in this case, we've only found two State court decisions that address a place being burgled, and I think that's problematic in light of the fact that this burglary of a building or a boat, this Massachusetts example, is really a paradigmatic example that this Court has always offered of a divisible statute. So to not know now under State law whether that's divisible is particularly problematic under Petitioner's approach. But just to get back to what I think was your central question, because I think this is really important about discamps and why we're reading the opinion our way aside from this conclusion at the end of footnote 2, which we think essentially says that for ACCA purposes, when you have something in the Shepard documents, it is, it functions as an element in that case. But aside from that, I think there are two other very telling parts of the Court's opinion in discamps. One is that the Court starts its opinion and throughout its opinion says that settled law, the Court's 20 years of precedent up to that point, pretty much resolved this question, all but settles this question. The Court was not purporting to change settled law. It wasn't purporting to do something extraordinary like require a State law inquiry. In fact, the whole Petitioner's argument in discamps or why you couldn't do the thing the Ninth Circuit wanted to do was because this whole thing is settled, you just look at the text of the statute, and the Ninth Circuit is really doing this kind of outlier approach and you shouldn't do that. So we read the opinion in discamps as a whole to say we're just applying settled law, and that's our position in this case, is we just want to apply this settled law in divisibility. Sotomayor, applying your approach now, how does discamp come out? How does discamp come out? Saharsky-Klein, Jr.: Same result, same result, because I think as your question suggested, there's a critical difference between discamps in this case, because there was an overbroad statutory term and there just was nothing in the statute that corresponded to generic burglary. So you can't do what the Court said is what you have to do. Which version of the offense was the person convicted of, and does it correspond to generic burglary? You couldn't do that in this case. Sotomayor, that's stretching things. I think 99 percent of the courts across the country would have looked at the plea agreement and said the prosecutor said he broke and entered a garage. We're going to find he broke and entered a garage, and that he didn't stay at a, I'm sorry, a grocery store, and he didn't stay unlawfully. So how do we get courts, assuming we accept your argument, not to do the kind of inferential retrying of the case that often happens when you're relying on Shepard documents? Saharsky-Klein, Jr.: Right. And I think this really goes to the heart of why the Court decided Deskamp's the way that it did, was the difference between a statute like one that just prohibits assault with a weapon and one that prohibits assault with one of eight specified weapons. When it just says assault with a weapon, the Court's opinion in Deskamp says you could infinitely divide up the terms of the statute to imagine any number of subcrimes and then try to match them to the Federal offense. When you don't have a statutory alternative, the Court's opinion in Deskamp says, what you're really doing is just matching the facts of the defendant's conviction. If you can find them in the Shepard documents, with the generic Federal offense. So it is in the case where there is no statutory alternative, like you said, you're just kind of combing through the documents and looking at facts, and the Court on Deskamp said, don't do that. But we're not doing that here. We don't need to try to comb through the facts. All we're saying is that this statute, like many burglary statutes, including the example the Court has given, covers burglary of multiple places, right? It covers burglary of buildings and boats and whatever else. And you just need to see which version of the offense was this person convicted of. Was it the burglary of a house or was it the burglary of a boat? So you look at the conviction documents to do it and you're just matching the offense as defined by the legislature in that case, with the Federal generic offense. You're not trying to match just facts and the rest of the offense. Kaganer, it doesn't do, the statute doesn't make it necessary for anybody to convict you of any single one of those things. And more to the point, since 95 percent of cases end in pleas, the statute doesn't make it necessary for you to plead to any one of those things. So whatever information is floating around in these opinions, nobody has had to find and the defendant has not had to plead to a particular offense with one of those alternative means. And that's the critical thing under not just a camp, under all of these elements-based decisions, is that it doesn't matter what you did. It doesn't even matter that you say you did something. What we have to be able to say is that under the law, you absolutely, the law required a particular finding that matches the generic crime. And in this case, that finding is not there. Well, I think that there are two different, I think it's important to divide between the two different parts of the inquiry. There's two questions, right? The first is, is the statute divisible, meaning is there an alternative in it that corresponds to generic burglary? And then the second is, was the person actually convicted of generic burglary? And I think your question gets to the heart of we need to make sure this person actually was convicted of generic burglary. And I don't think you need to do a separate State law inquiry to answer that question, because that's really what the modified categorical approach was designed to do, that you look at the Shepard documents and see, can we tell that the person was convicted of this form of burglary or not? And you do, you look at the modified, at the Shepard documents in combination with the statute that sets out those alternatives. And just to give you, just if I can give one example, right, in a case where we have a defendant who is convicted of burglaring a building, whether by guilty plea or by a jury trial, the only thing that's ever at issue is a building. And no one, I think, ever asked the question, well, in a separate different hypothetical case, could a defendant who was charged with a building and a boat be convicted if they didn't find if it was the building or find if it was the boat? No one thinks about it, because in this case where only the building is at issue, you have to find the building to convict it. I mean, its functioning is an element in that case. Either you find building and the person is convicted, or you don't find building and the individual, as a matter of law, can't be convicted. So we think that the modified categorical approach resolves and answers this concern that you have suggested about the Court ensuring that the person actually was convicted of generic burglary. And what Petitioner's approach should do is that even though the modified categorical approach already answers that question, we try to engraft this State law inquiry onto divisibility. And it's one that, you know, the Court's opinions, regardless of what the Court said in Deskamp, the Court's opinions definitely have not done before. And then I think this goes back to Deskamp's and why we think it goes our way, is that the Court provided these examples in Deskamp's, and it's provided them in other cases, too. And those examples just didn't depend on parsing State law. Those examples for, I think, the most paradigmatic one was the one Justice Breyer suggested, which is a burglary statute that covers buildings and houses that covers houses and boats, et cetera. And the Court has said on at least five occasions, I mean, Deskamp says this twice, that that statute's divisible. And it just would be odd for the Court to have said so many times that the statute is divisible if, in fact, it's divisible in some cases if you can find a case under State law, but it's not divisible in other cases if you can't find the case. Ginsburg, I think the purpose for which the State may classify this as a means rather than an element, what was the context in which the State made that determination? This question only arises when a person has been charged with more than one thing, so a burglary of a building and a boat, for example. And then the question is, if this goes to trial and the jury, and it goes to the jury, does the jury unanimously have to find which he did, the house or the boat, or can the jury find six members find house and six members find boat? And so this question actually just doesn't arise very much under State law. I mean, frankly, I was kind of surprised when we started looking at this case. I thought I'd be able to look at all 50 States and find law in this, and, you know, we just couldn't. Between the parties in this case, I think we found cases in two States. And I think another example that illustrates how this doesn't come up very often is the drug statutes. I think this Court knows from other prior cases that some State drug schedules list a lot of drugs that aren't on the Federal schedule. So in Maloui, for example, the Court, you know, had to figure out, is this like the Federal offense or is this not like the Federal offense. In the Ninth Circuit, justices who looked at this, or judges who looked at this said, you know, it's amazing because there are so many California drug convictions, and there's just no law on whether a drug has to be the type of drug has to be proven unanimously in the case where more than one are at issue. And when you talk about, you know, things like that where the Court in itself has assumed that the drug statutes would be divisible, and we don't know that answer for a case like California, I think it would really be a remarkable change to what the Court has done so far with the modified categorical approach. It's really not something that the Court's opinions have done in any meaningful way, and I think it would be unfortunate when the Court has provided examples like the burglary of a building or a boat, and the Courts relied on those examples, like the district court in this case and the court of appeals both relied on those examples and said this is the exact same thing that the Court said at that point. Breyer's right, like even with the Massachusetts statute, the question has never come up, so we don't really know what the jury has to find in the case of the houseboat. But where there's a word in the statute like DACOM, and that alternative thing, houseboat, da, da, da, is not in the statute, but rather it's a judge-made interpretation of the statute, and the courts say there are several different categories, it would be virtually impossible for a court under those circumstances to say that the A, B, and C, which it divided the statute into, that they are elements. You would have to say they are means. Do you think? I don't think a State court would have the power to, in the face of a statute that doesn't itself divide things, to say that A is an element of the crime that has to be defined, and then B is a different element of a different crime. Is that the answer? I have no idea the answer to that question. I'm looking for ways of simplifying this case, and if you knew the answer to that question, it would help me. Well, I think there are two answers to that question. The first is, we do think, and this is the Court left this question open in Des Camps about the extent to which you could use judicial decisions, but we do think that in some circumstances a judge could or a court could define a crime. I mean, there are common law crimes that are just defined by the courts, and that those could be divisible, but that's not, that was reserved in Des Camps, that's not something the Court had had to answer. But I think the second answer, which hopefully gets to your question, is, you know, can we, are there rules of thumb or something with the State courts that we can try to figure out whether something is a means or is an element based on how the statute is written, and I think the real trouble is that we can't. I mean, we've looked to try to find a source of law in Massachusetts, and we've also looked to what the State courts have told us their approaches are, and this is in our brief, but, for example, they say, you know, we don't have bright light rules, we have to use a multi-factor test, we set out rules, but they're mind-bending in their application. That's what one of the State courts said. You know, this is not a predictable area. And I think actually the Court recognized the same thing, and this was a key component of the Court's reasoning in Shad. Shad was the plurality opinion that was asking, are there constitutional limitations on how a court, how a State legislature can define means versus elements. That was a case in which the State legislature had said the jury doesn't unanimously have to agree on whether murder is premeditated murder or felony murder, and the defendant came in and said, wow, can you really say that the jury doesn't have to agree on that? There should be some constitutional limit. And one critical part of the Court's opinion was that there aren't any bright light rules about what constitutes a means or what constitutes an element. It's a matter of State law, and there is wide variation in that. So as much as we have looked, we don't think that there's an easy answer to these State law questions, and we think, you know, it's really asking a lot to think that Federal courts are going to be doing those in the first instance. I mean, these are questions about the State legislature's intent, and you're talking about, you know, either taking those questions kind of away from the State courts and having Federal courts start to do them on a routine basis, or we're talking about what one judge in the Ninth Circuit suggested, which is we're never going to find out these answers unless we certify these questions to the State courts. And if you're talking about sentencing judges who sentence every day and have to use a modified categorical approach, you know, certifying to the State courts, I think that really would be, you know, an extraordinary intrusion. So, you know, at the end of the day, I think we think that the Court really has a choice in this case between the approach that it's used for 25 years and the examples that it's given, and Petitioner's approach, and we think that Petitioner's approach really would upend the modified categorical approach. It would require the State law question to be answered in lots of cases in the first instance by Federal judges. We think that it would create a lot of uncertainty. The ACCA, as the Court has said, in dust camps, is supposed to function as an on-off switch, and it certainly wouldn't if we started. Sotomayor, tell me what your approach is that you think is our approach. Sure. Yeah, I'm glad to. That a statute is divisible when it sets out statutory alternatives, one of which corresponds to the Federal generic offense, that you don't need to undertake a State law inquiry into whether something is a means or element. Which is to say that elements don't matter. And that's the thing that is contrary to 25 years of this Court's precedence, because if this Court's precedents say anything, they say that this is an elements-based inquiry, which means that we have to decide whether something is an element. And that's really, I think, the next thing I was hoping to say, which is that the reason that the Court has talked about elements as well as the statutory alternatives is because it wants to have an assurance that the person actually was convicted of generic burglary. And the way you get the assurance is not through this State law inquiry into whether something is a means in a hypothetical case. You get the assurance through the review of the Shepard documents. And we think that the Court's, the end of the Court's analysis is that the Shepard documents are not a means. And we think in certain terms that that's not what we do, much as some people think that that's an intuitive way to decide these questions, much as some people think that maybe we should have done that 25 years ago. But we don't do that. We don't look at let's look at the documents and see what the guy did. We say let's look at the documents and see if he was necessarily convicted of something, meaning that the law required him, the law required that a particular finding be made in order for this conviction to occur. And that's where your approach is something very different from what we've ever done, because you're saying that notwithstanding that the law did not require that a particular finding be made, we'll take a look at the documents and decide that that finding was made. Well, maybe I should clarify a little bit and say that we think that we look to see whether the law required that this finding be made in reality in this case, not hypothetically in some different case. And what I mean by that is we are using the Shepard documents in conjunction with the fact that the statute lists alternatives. And what we are doing, the reason that we're not looking at facts is because the alternatives show that the legislature has defined this thing, entry into a building, as part of the offense, as a way to commit the offense. And then the question, the whole point of the modified categorical approach is can we know if the person was convicted of that thing or something else with certainty using the Shepard documents? The point of the modified categorical approach is to take a truly divisible statute, in other words, a statute with three separate elements in it, of which you only need to be convicted of one, and to figure out whether the one that you were convicted of, the one particular element, matches up with the generic offense. It's not to do anything more than that. DeCamp is quite clear on this, on this matter, that it takes, it's, it's, it's, it's three separate elements. Do you, is, what you were convicted of, is that the right element to match the generic offense? I think that we're in agreement to the extent that we're talking about matching the statutory alternatives with the generic Federal offense. It's not that you say statutory alternatives and I say elements, because for 25 years we've been saying elements, and that we can't do this inquiry if we're in the world of non-elemental facts. Well, frankly, I think the Court has said both things. You know, in the opinion in DeCamp's, there's actually part of the Court's opinion that equates the two. It says sentencing courts may look only at the statutory definitions. I give you that. Kagan. But elements are what defines the crime. Right. But I think that the, the Court used elements to mean the statutory definition because the alternatives set out in the statute do define the crime. And I, I take your point that the ultimate concern of the modified categorical approach is ensuring that the individual actually was convicted of generic burglary. But I don't think that we need to look to the separate State law question about what happens in a different defendant's case. I mean, that's what the means analysis that, that was Justice Ginsburg's question, right, goes to, which is what happens in a different case where more than one thing is at issue. When, when we have a statute that sets out this is a form of burglary, and the Court has talked about, you know, different versions of the offense, a version of the offense is burglary of a building, and so the legislature has defined that as an offense, and the question is, did the defendant, was he convicted of that offense? I think, and this I think goes to the other part of your question, which is, you're asking about how is that any different from fact-finding, right? That's just fact-finding. And I think the Court answered that question in Desk Camps when it gave the example of a statute that doesn't have the alternatives, like the Weapons I, as opposed to a statute that does have the alternatives. Because when the statute doesn't have the alternatives, you don't have an option that was identified by the legislature as part of the definition of the crime that you're trying to match to the Federal offense. You're not just, you're not looking at something that the legislature has defined and saying, well, did the Shepard document show that, or did they not show that? What you're doing is there's a hole in the statute, right? It doesn't tell you, for example, in Desk Camps the different types of entries. And you're just filling in that hole with facts. You're just looking at what are the facts of what the defendant did, can I glean them from the Shepard documents, and then you're trying to match them up with the Federal generic offense. And at that point, you know, the opinion in Desk Camps says, you know, it's not a categorical approach anymore. The Ninth Circuit, one judge in the Ninth Circuit in the court called it a modified factual approach at that point, right, because you're just trying to match the facts of what the defendant did. There's no statutory basis for calling this, building this type of burglary, you know, burglary. But here we have that statutory basis. We have those statutory alternatives. And the Court has said on so many different occasions, and the lower courts have relied on it, that it's the presence of statutory alternatives that are critical, because when you have that, those, in combination with the Shepard documents, you can make the decision of whether that statutory phrase was the basis for the conviction, whether the person was convicted of that version of burglary or not. But when you don't have that statutory phrase there, the Court said this on page 2287 of its opinion in Desk Camps, you're just asking what the defendant actually did. And that once you're doing that, when you're not looking at the way the legislature has defined the crime, there's really no stopping point, right? And I think that was the concern of the Court's opinion in Desk Camps, is that he could have been convicted of something that has nothing to do with burglary, and we'll just try to look through all the facts in the Shepard documents and see if they're really burglary. The Court said don't do that. But here, the legislature has defined this offense so that it, the all components of generic burglary are in the offense. And I understand the Court's instinct to think, well, we said elements, and elements means we have to make sure that the person had, that this actually was proven. But we think that the modified categorical approach itself, by taking the statute and then looking at the Shepard documents, does that, that it really satisfies the concern. And frankly, that's, that was the message that we got, and of course, the Court knows best what its opinion in Desk Camps meant. But that was the message that we got from the end of footnote 2 of Desk Camps, which says, you know, whether something is a means or elements, you shouldn't parse State law. You should just look to the Shepard documents. And that's what we're saying, is just to look to the Shepard documents. And if something is. So the end of footnote 2 said in some cases you won't need to parse State law, because you can figure it out from the Shepard documents. Because Shepard documents are a clue to whether something is a means or an element. And so in the situation in which State law is not, as it is in this case, utterly clear on the subject, you won't have to go 1,000 layers down because the Desk Camps, the Shepard documents will tell you, because of the way in which they are charged, the way the prosecutor has charged something, looks like this is just a means or looks like this is really an element. Well, I mean, we don't think you need to do the State law inquiry in the first place, because the Shepard documents will tell you that the person actually was convicted of that. And I just think this question about whether it was a means or an element doesn't make sense. Kagan. You have a State law that says exactly that this is not an element. Why wouldn't you just take that? Because it doesn't matter that that case is about what would happen to a different defendant in a case where more than one thing is charged, and it doesn't matter for our purposes what happens in that hypothetical case, because this individual and the individuals where we're trying to use the Shepard documents to actually enhance have just one thing charged, right? Like it's burglary of a building, and burglary of a building is generic burglary, and there's no dispute that the statute says burglary of a building and this is burglary of a building. And it would be odd to give that defendant a pass, because the only thing why is it conduct-based. It's conviction-based, it's okay. Conduct-based isn't. Conduct charges burglary of a house. Saharsky, it's conviction-based, the Court said in Taylor, because you want to have uniformity, right? Congress said burglary, and you want to make sure that everyone who's been convicted of the same type of offense actually is treated the same. And I think that's the problem with Petitioner's approach, is that you could have defendants convicted in two States that have the exact same State statute. Their Shepard documents could look exactly the same, and then this answer might turn on whether you could find some sort of State law that would say what would happen in a different case where a defendant is charged with more than one thing. So we think that the Court's approach has really come from this concern about uniformity. And I don't know, just one other point, which is I think it's really telling that the reason that the Court adopted it. I mean, let's go back to where this started, right? It's what does burglary mean under the ACCA? And the Court adopted the burglary definition it did, which is generic burglary, because it encompassed the definitions in most States. The Court wanted to reach the common denominator in most States. And the effect of Petitioner's position, I think we all agree, is that it would not, the modified categorical approach would not reach burglary in most States, that the ACCA would have a very limited application at best under Petitioner's approach. And of course, you know the modified categorical approach is used in so many different areas. And so these problems with parsing State law, et cetera, would be multiplied through all of the other different statutes in which the Court has used the modified categorical approach. So we really think that Petitioner is doing what, you know, was the outlier approach in desk camps, which is trying to change, you know, 20-plus years of settled law, and start having this new additional inquiry. We just think you shouldn't do it. Kagan, here you have a State statute that specifically tells you that this is not an element of the offense. And you were saying why it was that you thought that you could ignore that, excuse me, not a State statute, but a State judicial opinion, why it was that you could ignore that. The only reason you could ignore that State judicial opinion is because if you don't care, it's an element. And that's very much against what we've been saying since Taylor. Could I respond? I don't think that's true. The reason that you don't care is because you can tell from the Shepard documents that the individual in this case and in similar cases actually was convicted of generic burglary. And that defendant doesn't care whether it's a means or an element because it had to be proven in his case for him to get convicted. We think the judgment should be affirmed. Thank you, counsel. Three minutes, Mr. Fleming. Thank you, Mr. Chief Justice. What has been on the books for 25 years is this Court's statement in Taylor that the categorical approach turns on, quote, the elements of the statute of conviction. Or as the Court put it in Moncrief, what facts are necessarily established by a conviction for the State offense. It's been very clear from my colleague's argument that the government is interested in what Mr. Mathis did, and that is not what ACCA looks to. It is not the categorical approach. The government has offered no reason of principle to distinguish this case from Mr. DeKamp's case. The only distinction between the two cases is that Iowa statute uses the word or with a disjunctive list, and California does it by silence by simply using the word enters without adding lawfully or unlawfully. There is no reason to treat those situations differently, given that both California through silence and Iowa through an express list are setting out only the means of commission, and they have nothing to do with what Taylor calls the focus of the modified and the traditional categorical approach, which is the elements of the statute of conviction. The drug statutes in California are an example of the workability of the position that we and the Ninth Circuit and the Fourth Circuit have set out. They have been many decisions. We cite them in our reply brief, finding that the drug statutes are indeed divisible by drug type, and so the modified categorical approach does apply. There are numerous other decisions where the modified categorical approach will continue to apply. States obviously can also, if they want their convictions to qualify as active predicates, can make sure they have a generic offense where the conviction clearly requires proof of generic burglary. The government's position will cause a significant Sixth Amendment problem because sentence enhancements are going to be based on something beyond the mere fact of a conviction. It would require this Court to consider whether to expand the Almandara's exception. Alito, you're seriously arguing that all of the States will or should go back and reformulate their burglary statutes so as to make the conviction? No, Your Honor. Well, that's what you just said. So if they want them to count as ACCA predicates, no problem. They can just go back and change their burglary statutes. As some States have generic burglary statutes that do require proof of all the elements of generic burglary, if Congress is dissatisfied with the reach of ACCA, it can ameliorate and amend ACCA. ACCA used to have a definition of burglary in it in 1984. It said burglary involves a building. Congress could very easily say, you know what, that was too narrow. We're going to overrule that aspect of Taylor and we'll say burglary for purposes of ACCA will include boats and houses. Nothing prevents them from doing that. They could amend ACCA so it focuses on conduct instead of convictions. There have been many calls for Congress to do that, but for 25 years, and stare decisis is particularly important in this statutory area, Congress has let this Court's interpretation back. Alito, I think the fact that until this case, the Court has never analyzed whether something was an element or a means. The same point could have been made in DECAMP, and DECAMP specifically said that. Well, you said this has been established for 25 years and the Court has used the term element, element, element, but has it ever before gone into the question of whether what it was talking about in that particular case was in a technical sense either an element or a means? May I respond, Mr. Chief Justice? The issue did not come up before DECAMP. So as the previous cases came to the Court, the issue either did not matter or it was not disputed. And it is not uncommon for this Court to take as assumed issues that the parties are not disputing. In DECAMP it was disputed. In this case it is disputed. And for it to be resolved consistently with what the Court has said for 25 years, it's important that the Court maintain the focus on the elements and not on the means. Otherwise, DECAMP would have come out the wrong way. We submit it came out the right way, and this case should come out the same way. We would respectfully submit the judgment should be reversed and the case remanded so Mr. Mathis can be resentenced without regard to ACCA. Roberts' Thank you, counsel. The case is submitted.